COMMONWEALTH *vs.* RAYMOND ADAMS.

Essex.   January 7, 1952. — February 4, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Cider.   Alcoholic Liquors,* Cider.

The three per cent limitation of alcoholic content of cider in G. L. (Ter. Ed.) c. 138, § 3, as appearing in St. 1933, c. 376, § 2, applies, with respect to farmers, only to farmers who sell cider "in any quantity."

A sale by a farmer of a gallon of cider which was made by him of his own apples and was not to be drunk on his premises was, by reason of G. L. (Ter. Ed.) c. 138, § 3, as appearing in St. 1933, c. 376, § 2, not subject to said c. 138 and was not unlawful, although the cider contained more than three per cent of alcohol by weight at sixty degrees Fahrenheit.

COMPLAINT, received and sworn to in the District Court of Newburyport on June 10, 1950.

Upon appeal to the Superior Court, the case was tried before *Good,* J.   The defendant alleged exceptions to the denial of his motions to quash the complaint and to direct a verdict of not guilty.

*B. J. Lojko,* for the defendant.

*H. R. Mayo, Jr.,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant, a farmer, sold a gallon jug of cider, made by him of his own apples, not to be drunk on his premises.   There was evidence that the cider contained more than three per cent of alcohol by weight at sixty degrees Fahrenheit.[1]   He was tried, convicted, and fined upon a complaint charging that on May 25, 1950, he "did unlawfully sell alcoholic beverages to your complainant [a State police officer], against the peace of said Commonwealth, and contrary to the form of the statutes in such cases made and provided."

---

[1] The actual weight was 4.57 per cent.

The question for decision is whether the sale was within the three per cent weight limitation in G. L. (Ter. Ed.) c. 138, § 3, as appearing in St. 1933, c. 376, § 2, as amended by St. 1935, c. 440, § 3, which reads: "This chapter shall not apply to the manufacture or storage of alcoholic beverages by a person for his own private use or to sales of cider at wholesale by the original makers thereof, or to sales of cider by farmers, not to be drunk on the premises, in quantities not exceeding in the aggregate the product of apples raised by them in the season of, or next preceding, such sales, or to sales of cider in any quantity by such farmers not to be drunk on the premises if such cider does not contain more than three per cent of alcohol by weight at sixty degrees Fahrenheit; nor shall this chapter apply to sales of cider by the original makers thereof other than such makers and farmers selling not to be drunk on the premises as aforesaid, if the cider does not contain more than three per cent alcohol as aforesaid, not to be drunk on the premises as aforesaid."

The statute is far from clear. It purports to deal with three kinds of sellers of cider. First mentioned are original makers selling at wholesale. Next come two classes of farmers selling cider not to be drunk on their premises, the sales of one class being limited in quantity to the product of apples raised by each in that or the preceding season, and the sales of the other being without limit in quantity. There can be no doubt that the three per cent alcoholic content requirement applies to the second class of farmers. If the same requirement were to apply to the first class of farmers, no sound reason appears for dividing farmers into two classes. If the treatment of the two classes is the same, the distinction is unnecessary. Likewise, it would be hard to explain why the statute seeks to draw a distinction as to wholesale sales between farmers and other original makers. In our opinion, the limitation of alcoholic content applies only to the nearest grammatical antecedent, namely, those farmers who can sell in any quantity, without being confined to the product of their own apples raised in the

current or next preceding season. Should it be objected that this construction seems unjustifiably to favor original makers, other than farmers who are limited to selling the product of their own apples of the current or next preceding season, the answer must lie with the Legislature.

Legislative history aids little in analysis of the pertinent statute. There was an interpretation of St. 1894, c. 489, in *Commonwealth* v. *Boyden*, 183 Mass. 1. See *Commonwealth* v. *Petranich*, 183 Mass. 217; R. L. c. 100, § 1. Doubtless because of those decisions, c. 489 was greatly changed by St. 1903, c. 460, § 1, which was the basis of G. L. (Ter. Ed.) c. 138, § 3, as appearing in St. 1933, c. 376, § 2, now amended in a respect presently immaterial by St. 1935, c. 440, § 3.

*Exceptions sustained.*
*Judgment for the defendant.*